Makonnen YOSEPH, Petitioner,

v.

John ASHCROFT, Attorney General of the United States of America, Respondent.

No. 02–2871.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) June 5, 2003.

Decided March 3, 2004.

Visuvanathan Rudrakumaran, New York, NY, for Petitioner.

Earle B. Wilson, Michael P. Lindemann, John D. Williams, Terri J. Scadron, Jennifer A. Parker, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before BARRY, FUENTES, Circuit Judges, and MCLAUGHLIN,* District Judge.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

The Petitioner, Makonnen Yoseph, a native and citizen of Ethiopia, appeals the Board of Immigration Appeals' ("BIA") decision to affirm, without opinion, the denial of his application for asylum and withholding of removal. The Immigration Judge ("IJ") concluded that Yoseph was not a victim of past persecution and was not likely to be the subject of future persecution if he returned to Ethiopia. We will deny the petition for review.

## I.

Because we write for the parties, our review of the factual background is limited to that which is necessary to inform our opinion today. Petitioner Yoseph is a twenty-nine year old native of Ethiopia who was admitted to the United States on February 27, 1988, as a non-immigrant student to attend Caldwell College in Caldwell, NJ. In November 1997, the Immigration and Naturalization Service ("INS") issued a Notice to Appear, charging Yoseph with removability under INA § 237(a)(1)(C), 8 U.S.C. § 1227, for failing to maintain or comply with the conditions of his non-immigrant status. At a hearing in March 1998, Yoseph, through his attorney, admitted the factual allegations in the Notice to Appear, conceded removability, and requested political asylum, withholding of removal and, in the alternative, voluntary departure.

In his testimony in support of his application for asylum and withholding, Yoseph stated that he was born and raised in Addis Ababa, Ethiopia where he completed his high school education. He came to the United States in 1988 to get a degree from an American university. He testified that he was never arrested or detained in Ethiopia but that his father had been arrested in 1991 because he worked for the previous government there and because he was a member of the Amhara ethnic group, a minority ethnic group in Ethiopia. He claims his father had been detained for four years and then released due to a medical condition.

Yoseph further testified that the current regime in Ethiopia is mainly comprised of the Tigrean ethnic group and that all other groups are considered hostile to the present government. Yoseph is a member of the Amhara ethnic group which, according to him, is considered by the current government to be a major opposition group. Yoseph also detailed his current activities on behalf of Amharas here in the United States, testifying that he coordinated membership activities here and informed them about events back home. To corroborate this aspect of his testimony, he submitted a letter from the All–Amhara People's Organization (AAPO) in New York.

Yoseph also testified that his mother and father remain in Ethiopia and he knew of no other relatives who had ever been harassed or persecuted. However, based on information from various human rights groups that Amharas in Ethiopia have been persecuted and jailed, he believed he would be persecuted if returned to Ethiopia. As previously stated, the IJ denied Yoseph's petition for review and the BIA affirmed without opinion.

* Hon. Mary A. McLaughlin, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

## II.

We have jurisdiction to review the BIA's final order of removal pursuant to 8 U.S.C. § 1252(a)(1). We review the BIA's decision unless the BIA defers to the decision of the IJ. We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). *See Mulanga v. Ashcroft*, 349 F.3d 123, 131 (3d Cir.2003). The IJ's adverse credibility determination and findings of fact with respect to petitioner's withholding of removal must be reviewed under the substantial evidence standard. *See Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d. Cir.2003). Under the substantial evidence standard, a petitioner "must show that the evidence he presented was so compelling that no reasonable fact finder could fail to find" otherwise. *INS v. Elias–Zacarias*, 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

## III.

### A.

■ We first address the petitioner's contention that the BIA's application of streamlined appellate procedures to his case under 8 C.F.R. § 3.1(a)(7) (2000) denied him the "right to a meaningful appellate review." In essence, his claim is that the BIA's decision to affirm without opinion denied him due process. We recently addressed the regulations under review. In *Dia v. Ashcroft*, 353 F.3d 228, 238 (3d Cir.2003) (*en banc*), we determined that the streamlining regulations neither violate the Due Process Clause of the Constitution nor do they run afoul of the Immigration and Naturalization Act.** Based on our decision in *Dia*, we must conclude that the BIA's actions in this case were proper.

** The INA was amended by the Homeland Se-

### B.

Yoseph applied for both asylum under § 208 and withholding of removal to Ethiopia under § 241. To be eligible for ayslum, an alien must demonstrate that the individual is a "refugee" as defined by INA § 1101(a)(42)(A). That is, he must show that he is unwilling or unable to return to his country "because of" persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion. In *INS v. Cardoza–Fonseca*, the Supreme Court held that the well-founded fear element of the definition of a refugee requires that the asylum seeker demonstrate that there is a "reasonable possibility" that he will be exposed to persecution upon his return. 480 U.S. 421, 440, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (adopting language of *INS v. Stevic*, 467 U.S. 407, 424–25, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984), which pointed out that "it is enough that persecution is a reasonable possibility"). As the IJ also noted, an applicant for withholding of removal under § 241(b)(3) must demonstrate a "clear probability" of persecution based on one of the five protected grounds. *See Stevic*, 467 U.S. at 430. Withholding of removal is a higher standard for a refugee to meet. *See Senathirajah v. INS*, 157 F.3d 210, 215 (3d Cir.1998) (holding that an alien must show that it is more likely than not that he will be subjected to persecution upon his return to qualify for withholding of removal; but even if he fails to meet this standard, he may qualify for a grant of asylum at the Attorney–General's discretion if he shows a well-founded fear of persecution, which only requires him to show that persecution is a reasonable possibility on his return). The persecution must be committed by either the government or forces the government is unable or unwilling to con-

curity Act of 2002.

trol. *See Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir.2002). A well-founded fear of persecution has both a subjective and an objective element: the alien must have a genuine fear of returning to his home country, and that fear must be objectively reasonable, meaning that a reasonable person in his circumstances would fear persecution upon his return. *See Cardoza–Fonseca*, 480 U.S. at 430–31.

In regard to Yoseph's asylum application, the IJ held that Yoseph failed to establish that he suffered past persecution or has a well-founded fear of future persecution because he did not present a detailed and specific account of his claims. The IJ also determined that Yoseph failed to provide corroborating evidence respecting an important part of his asylum claim.

■ In finding Yoseph not credible, the IJ observed that Yoseph's testimony concerning his fears of future persecution lack detail and specificity. Yoseph failed to provide any specific information respecting his father's alleged arrest and detention, which presumably spanned a period of four years, except to say merely that his father came under arrest because he had worked for a previous government and that he was a member of the Amhara ethnic group. Yoseph failed to provide any documentary evidence to confirm this aspect of his testimony and failed to supply any affidavits from either parent, both of whom still reside in Ethiopia. Additionally, Yoseph failed to explain why such corroborating evidence was not available. Yoseph did supply a letter from the AAPO organization in New York confirming his membership there, but that letter provides no specific details respecting Yoseph's allegations about his father's political activities, his father's arrest or his father's release for medical reasons.

We note, as well, that Yoseph's claim that the current government is principally made up of the Tigrean ethnic group is belied by the State Department Profile, which states that members of the Amhara group do participate in the government there. According to the Profile, the current regime has made an effort to include all ethnic groups in its administration. Its first cabinet had four Amhara members, including the Prime Minister who was also the Commander–in–Chief of the Ethiopian Armed Forces. Additionally, the Profile notes that Amharas are major members of the Ethiopian People's Revolutionary Democratic Front, which captured 97% of the seats in the National Parliament in the 1995 elections. The Profile further notes that there are no current reports of any members of Amhara in exile facing trial or conviction upon their return to Ethiopia for anti-government activities conducted overseas. These observations from the State Department Profile work directly against Yoseph's assertion that he fears persecution if returned to Ethiopia.

In sum, we conclude that the IJ's decision to deny asylum is supported by sufficient evidence contained in the record. There is no evidence that would compel a reasonable fact finder to conclude that the IJ erred. Moreover, because the standard for establishing withholding of removal is more stringent than the standard for asylum, an alien who fails to demonstrate eligibility for asylum also fails to satisfy the more stringent standard for withholding of removal. We have carefully examined Yoseph's other contentions and find them to be wholly without merit.

## IV.

For the forgoing reasons, the petition for review will be denied.